***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Baddour and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence. The Full Commission adopts the Opinion and Award of Deputy Commissioner Baddour with minor modifications.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following,
which were entered into by parties as:
 STIPULATIONS
1. All parties are properly before the Commission and that the Commission has jurisdiction of the parties and of the subject matter. *Page 2 
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of the parties.
3. In addition to other stipulations contained in the Pre-Trial Agreement, the parties hereto stipulate and agree with respect to the following undisputed facts:
 (a) Both plaintiff and defendants are subject to the Act.
 (b) Plaintiff was the employee of defendant Lamar OCI South Corporation on May 10, 2001, and on November 17, 2003.
 (c) Plaintiff sustained a compensable injury by accident on or about May 10, 2001 in the course and scope of his employment with defendant, when he injured his cervical spine (NCIC File No. 222918).
 (d) Plaintiff alleges that he sustained a compensable injury on November 17, 2003 when he suffered a heart attack. This injury/heart attack has been denied by the defendants (NCIC File No. 532240).
 (e) Plaintiff's average weekly wage on May 10, 2001 equals $488.31.
 (f) Defendants accepted the claim for injuries suffered on May 10, 2001 by a Form 60 dated March 3, 2003.
 (g) On March 11, 2004, defendants received a letter from Dr. Maxy dated February 19, 2004.
 (h) On July 9, 2004, Executive Secretary Weaver entered an Order approving a Form 18M which had been signed by Dr. Maxy regarding plaintiff's need for "continued/periodic treatment for pain."
 (i) Defendants prepared a Form 21 dated October 29, 2004 and sent it to plaintiff. *Page 3 
 (j) Plaintiff signed the Form 21 dated October 29, 2004.
 (k) Plaintiff wrote to the Industrial Commission, stating, inter alia, that he was unable to return to work and had an ongoing infection related to his neck surgery. Plaintiff alleges that the day of the letter was on or before December of 2004.
 (l) On or before December 2004, defendants sent a Form 25A to plaintiff, asking him to "certify that all medical reports related to the injury which are known to exist have been filed with the Industrial Commission for consideration pursuant to N.C. Gen. Stat. § 97-82(a) . . ." Plaintiff alleges that defendants did not send any medical records to plaintiff with the Form 25A.
 (m) Plaintiff signed the Form 25A on or about December 17, 2004.
 (n) A signature stamp reading "Stephen T. Gheen" was affixed to the October 29, 2004 Form 21 on February 25, 2005.
 (o) On April 28, 2005, Chief Deputy Commissioner Gheen wrote to plaintiff stating that "the Form 21 submitted could not be approved" and enclosed a blank Form 33 with a suggestion that plaintiff file for a hearing.
 (p) A Motion was filed on May 27, 2005 by plaintiff to set aside the Form 21 and Form 25A.
 (q) A Form 33 was filed by plaintiff on July 14, 2005 requesting a hearing and requesting that approval for the Form 21 filed by defendants in Case No. 222918 should be withdrawn as improperly granted and in the alternative, requesting that the Commission should set aside the Forms 21 and 25A *Page 4 
submitted in Case No. 222918 due to error caused by fraud, misrepresentation, undue influence or mutual mistake.
 (r) Defendants denied the claim for plaintiff's injury on November 17, 2003.
 (s) Plaintiff's claim for injury suffered on May 10, 2001 and his claim for injury suffered on November 17, 2003 were consolidated for hearing by Order filed January 10, 2006.
 (t) Defendants have paid the mediation fees of James S. Walker in the amount of $437.50. Plaintiff agrees that Rule 7 of the North Carolina Industrial Commission Mediated Settlement Conference Rules shall govern payment or reimbursement of this fee.
 *********** EXHIBITS
The following exhibits were admitted into evidence:
 (a) Stipulated Exhibit 1: Pre-Trial Agreement
 (b) Stipulated Exhibit 2: CD ROM containing Medical Records, Industrial Forms, and Other Documents as Indicated on the Index Page.
 *********** ISSUES (a) Whether the Form 21 Agreement should be set aside? If so, to what additional benefits, if any, is plaintiff entitled?
 (b) Whether plaintiff suffered a compensable heart attack on November 17, 2003? If so, to what benefits, if any, is plaintiff entitled?
 *********** *Page 5 
Based upon all the competent evidence from the record, the Full Commission finds as follows: FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was 56 years old and had earned his GED. Prior to working for defendant, plaintiff worked in the construction industry, the shipping industry, and was in the United States Marine Corps for two years.
2. Plaintiff began working for defendant in January 2001 as a climber on a billboard building crew. Climbers are required to scale or climb billboard platforms up to seven times per day, ascending as much as one hundred feet in height, pulling up new signs weighing approximately forty to eighty pounds, and installing the signs on the structure.
3. On May 10, 2001, plaintiff suffered an admittedly compensable injury to his neck. Following the injury, plaintiff continued to work until December 2002 when he underwent a cervical disectomy and fusion by Dr. Ralph J. Maxy.
4. Following his surgery, plaintiff was out of work for approximately four months, from December 2002 through March 2003. Plaintiff was paid temporary total disability compensation during this period of time. On March 27, 2003, Dr. Maxy determined that plaintiff was at maximum medical improvement and released plaintiff to return to full duty work, and plaintiff returned to work for defendant.
5. Following his release, plaintiff continued to periodically see Dr. Maxy. On September 18, 2003, Dr. Maxy completed a Form 25R indicating that plaintiff retained a 5% permanent partial impairment rating to his neck.
6. On or about November 17, 2003 or November 18, 2003, plaintiff suffered a heart attack. Defendants have denied the compensability of plaintiff's heart attack. *Page 6 
7. Following his heart attack, plaintiff never returned to work and remained out of work as of the date of the hearing before the deputy commissioner.
8. In February 2004, plaintiff submitted a Form 18M, Employee's Application for Additional Medical Compensation, for his admittedly compensable neck injury. The Form 18M was approved by the Industrial Commission.
9. On February 19, 2004, plaintiff saw Dr. Maxy and requested that he be assigned work restrictions prohibiting him from wearing a hardhat or harness, even though plaintiff had been out of work since November 17, 2003 due to his heart attack. Dr. Maxy testified that plaintiff requested the work restrictions and that plaintiff discussed with him the fact that the hat and the harness were causing pain. Plaintiff wanted Dr. Maxy to write a letter to restrict plaintiff from having to wear the hat and harness. Prior to his February 19, 2004 appointment, plaintiff had contacted Dr. Maxy by phone regarding the hardhat and harness issue. Dr. Maxy did not record the dates of the phone calls but indicated they occurred over the last few months prior to the February 19, 2004 appointment. No medical records of Dr. Maxy indicate that plaintiff complained of problems with the hardhat and harness between plaintiff's full duty work release on March 27, 2003 and plaintiff going out of work in November 2003 due to his heart attack. Based upon the foregoing, and considering plaintiff's medical records and the expert medical testimony as a whole, the undersigned find that hardhat/harness restrictions assigned at plaintiff's request on February 19, 2004 when plaintiff was already out for work for his heart attack are not a credible basis upon which to award disability benefits.
10. On October 29, 2004, the parties executed a Form 21 Agreement for payment of the rating to plaintiff's neck related to his May 10, 2001 injury. At the time plaintiff entered into the Form 21 Agreement for his neck rating, he was aware that he had been out of work since *Page 7 
November 17, 2003 due to his heart attack, and he was also aware of the hardhat and harness restriction he had discussed with Dr. Maxy on February 19, 2004. Specifically, Dr. Maxy confirmed during his deposition that plaintiff was fully aware of the restriction that he had imposed at plaintiff's request. On November 30, 2004, the Industrial Commission instructed the parties to correct Line 7 of the Form 21 Agreement, as well as complete a Form 25A and a complete copy of the medical records. Based upon the greater weight of the evidence, the Full Commission finds that there is insufficient evidence that the Form 21 was altered by defendants prior to submission as alleged by plaintiff.
11. The Form 21 Agreement was approved by Chief Deputy Commissioner Stephen T. Gheen on February 25, 2005. Pursuant to the terms of the Form 21, plaintiff cashed a check in the amount of $8,790.66, which represented the value of a 9% permanent partial impairment rating to his neck.
12. Chief Deputy Commissioner Gheen testified that the Form 21 would not have been approved if medical records were not submitted with the agreement; however, due to computer failure at the Industrial Commission, it is impossible to ascertain whether particular medical records were submitted with the Form 21.
13. On April 28, 2005, Chief Deputy Commissioner Gheen sent a letter to plaintiff and the adjustor handling the claim stating that he had received a letter from plaintiff, and due to the contents of the letter he was not approving the Form 21 because it appeared that plaintiff was contending that he could not return to work at the same employment due to his medical restrictions and that he was still requiring medical treatment. Plaintiff testified that he sent an undated handwritten letter to the Industrial Commission on December 17, 2004 indicating that he did not receive all the money he was entitled to receive. However, Chief Deputy Commissioner *Page 8 
Gheen could not confirm when plaintiff's handwritten letter was received by the Industrial Commission except that it was received by April 28, 2005.
14. Plaintiff testified that he executed the Form 21 Agreement prior to becoming aware of Dr. Maxy's February 19, 2004 letter. However, plaintiff had seen Dr. Maxy on February 19, 2004 and discussed work restrictions of no use of hardhat or harness. In addition, Dr. Maxy's letter was written at the request of plaintiff. Despite plaintiff's testimony that he was not provided with any medical records with the Form 21 Agreement, plaintiff executed the Form 25A certifying that he had received a copy of his medical records at the time he executed the forms.
15. Even if the Form 21 were to be set aside, plaintiff has failed to establish that he would be entitled to any additional temporary total disability compensation due to his neck condition. As found above, the hardhat/harness restriction is not a credible basis upon which to award disability benefits. Additionally, based upon the greater weight of the credible evidence of record, even with the hardhat/harness restriction, plaintiff would likely have been able to find suitable employment within the restriction had he not been out of work due to his heart attack.
16. Plaintiff also alleges that he suffered a compensable heart attack on November 17, 2003 arising out of and in the course and scope of his employment with defendant. Defendants have denied that plaintiff suffered a compensable heart attack.
17. On November 17, 2003, plaintiff was working with two other crew members, Johnny Gragg and Travis Greene, to hang a vinyl billboard sign weighing approximately 47 pounds. New signs weigh approximately 40 to 80 pounds depending on the size of the sign.
18. Plaintiff was the first person to climb up to the catwalk on the billboard. Upon reaching the catwalk, plaintiff began pulling up the sign with a rope on his own instead of *Page 9 
waiting for Mr. Greene to help him. By the time Mr. Greene reached the catwalk, plaintiff had already pulled up the sign by himself.
19. Both Mr. Greene and Mr. Gragg credibly testified that they had seen plaintiff pull up vinyl signs by himself prior to November 17, 2003. On cross examination, plaintiff admitted that he had pulled up signs by himself in the past. Based upon the greater weight of the evidence of record, the undersigned find that it was not unusual for plaintiff to pull up signs by himself.
20. Plaintiff testified that after pulling up the sign, he lay down and was struggling for breath.
21. Neither Mr. Gragg nor Mr. Greene saw plaintiff lying down or in any type of distress. All three men hung the billboard that morning, which took approximately 30 to 40 minutes.
22. After they finished their work, the three men got into their single cab truck and headed to the next job site. As they were traveling, there was a dispute as to the radio station between plaintiff and Mr. Gragg and Mr. Greene. Due to the intensity of this dispute, the decision was made to return to the shop to resolve the issue.
23. Upon arriving at the shop, Mr. Greene and Mr. Gragg talked to Mr. Braswell about the issue. After this discussion, Mr. Braswell and Jamie Machut went to speak with plaintiff. During this conversation, plaintiff did not express any need for medical attention nor did he mention that he lay down and was struggling for breath during their first job of the morning.
24. Following this discussion, the three-man crew consisting of plaintiff, Mr. Gragg, and Mr. Greene went back out to complete the rest of their work for that day. The remainder of the day consisted of taking down top outs at various locations. *Page 10 
25. After finishing a full workday, plaintiff clocked out and testified that he went home. At no point on November 17, 2003 did plaintiff report to any representative of defendant that he was not feeling well or that he needed medical attention.
26. The following day, November 18, 2003, plaintiff had a court date. When asked under oath about the reason for his court date, plaintiff testified on direct examination that he had a court hearing with his ex-wife because they were having a disagreement over 30 acres of land and were trying to wrap up their domestic matters. Plaintiff testified that his ex-wife did not appear for the hearing that day, and after it was continued, he went back to his car and drove straight to Dr. Maglione's office. On cross-examination, plaintiff again testified that he had a court date due to a dispute with his ex-wife. When plaintiff was asked if it was for a domestic violence dispute, he denied it. Upon further questioning, plaintiff said the reason for his court appearance was to sell his and his ex-wife's property. Only after being confronted with a subpoena for assault on Deborah Ragsdale did plaintiff admit that actual reason for his court date. At that point, plaintiff admitted that he had been charged with assault and that his court date had been set for November 18, 2003. Plaintiff also admitted that it was a stressful time after being charged with an assault and that he just wanted it over with.
27. Based upon plaintiff's testimony and the untruthful nature of plaintiff's testimony during the hearing before the deputy commissioner, the Full Commission does not find plaintiff to be a credible witness.
28. On November 18, 2003, after exiting the courthouse, plaintiff was not feeling well and went directly to Dr. Maglione's office, presenting with chest pain and weakness. Ultimately, plaintiff was admitted to Caldwell Hospital due to chest pain. Plaintiff had sought significant *Page 11 
medical treatment with Dr. Maglione prior to November 17, 2003. Dr. Maglione testified that he began treating plaintiff in November 2000 for his heart problems.
29. After being transferred to two different hospitals, plaintiff ultimately underwent heart surgery. Following plaintiff's release from the hospital, he continued to seek treatment with Dr. Maglione. Ultimately, Dr. Maglione advised plaintiff that he should not return to work as a billboard hanger.
30. Dr. Maglione's opinion that plaintiff suffered a heart attack on November 17, 2003 while at work is based upon plaintiff's history, deemed to be not credible, that plaintiff began experiencing symptoms of pain and shortness of breath while pulling up the sign on November 17, 2003. Therefore, Dr. Maglione's opinion is not competent evidence to establish causation.
31. Based upon the greater weight of the competent evidence of record, the Full Commission finds that plaintiff did not suffer a heart attack while at work on November 17, 2003.
 ***********
Based upon all the competent evidence from the record, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff failed to establish that the Form 21 Agreement was entered into based upon fraud, misrepresentation, undue influence, or mutual mistake. Further, plaintiff has failed to show that his medical records were not properly submitted to the Industrial Commission with the Form 21. Even if the Form 21 were to be set aside, plaintiff has failed to demonstrate that he *Page 12 
would be entitled to any additional temporary total disability compensation for his neck injury. N.C. Gen. Stat. §§ 97-17; 97-29.
2. The competent and credible evidence of record fails to establish that plaintiff suffered a heart attack in the course and scope of his employment on November 17, 2003 or that plaintiff was engaged in any unusual or extraordinary exertion on November 17, 2003 that would constitute an accident under the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2(6); Harding v. Thomas Howard Co.,256 N.C. 427, 124 S.E.2d 109 (1962).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim to set aside the Form 21 approving payment of a rating for plaintiff's admittedly compensable neck injury is DENIED.
2. Plaintiff's claim for compensation under the North Carolina Workers' Compensation Act due to an alleged compensable heart attack occurring on November 17, 2003 is hereby, DENIED.
3. Each side shall bear its own costs.
This the 25th day of September 2008.
 S/___________________
 BUCK LATTIMORE
 COMMISSIONER
CONCURRING:
 S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ PAMELA T. YOUNG CHAIR *Page 1